IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHLEEN M. O'NEIL,                                    CV. 08-3017-PK

                        Plaintiff,                    FINDINGS AND
                                                      RECOMMENDATION

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

                        Defendant.
_____

PAPAK, Magistrate Judge:

        Plaintiff Kathleen O'Neil challenges the Commissioner's decision denying her

application for disability insurance benefits under Title II of the Social Security Act.  The court

has jurisdiction under 42 U.S.C. § 405(g).  The Commissioner's decision should be affirmed.

## BACKGROUND

        Kathleen O'Neil was born in 1947.  (Tr. 23.)  She graduated from high school and

attended college for two years.  *Id.* at 262.  O'Neil worked until September 4, 2004, when she left

Page 1 - FINDINGS AND RECOMMENDATION

her job as a postal clerk due to her symptoms.  *Id* at. 65, 269.  Before that job, she worked in graphics assembly for a newspaper for a number of years but was laid off due to restructuring. *Id.* at 66-67.  She also had experience as a clerk and as a co-owner of a bookstore.  *Id.* at 84, 157.

O'Neil filed her application for disability benefits in December 2004, alleging September 4, 2004 as her onset date.  *Id.* at 58.  After the Commissioner of Social Security denied her application initially and upon reconsideration, O'Neil requested a hearing before an administrative law judge (ALJ).  *Id.* at  36.   The ALJ held a video hearing on August 6, 2007 and took testimony from O'Neil, represented by an attorney, and from a vocational expert.  *Id.* at 13,

260.  On September 24, 2007, the ALJ issued a decision finding O'Neil not disabled because she could perform her past relevant work as a postal clerk, graphic assembler, general office clerk and bookstore owner.  *Id.* at 20-21.

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520.  *Id.* at  14-15.  At step one, the ALJ found that O'Neil had not engaged in substantial gainful activity since September 4, 2004.  *Id.* at 15.  At step two, the ALJ found O'Neil had the following severe combination of impairments: obesity and fibromyalgia.  *Id.* Although O'Neil alleged depression, back pain, carpal tunnel syndrome and bilateral knee pain, the ALJ concluded that these were nonsevere impairments.  *Id.* at 16.  At step three, the ALJ found that O'Neil's  severe and nonsevere impairments, or a combination of those impairments, did not meet or medically equal a listed impairment.  *Id.* at 17.  At step four, the ALJ found that O'Neil was able to perform her past relevant work and accordingly did not proceed to step five. *Id.* at 20.  The ALJ concluded that O'Neil was not disabled.  *Id.* at 20-21.

The Appeals Council denied review of the ALJ's decision.  *Id.* at  4.  This action made the ALJ's decision the Commissioner's final decision. O'Neil filed this appeal.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (citation omitted).  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  If evidence supports more than one rational interpretation, the court upholds the Commissioner's decision.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted).  "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citation omitted).

## DISCUSSION

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental

impairment" is one that "results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

42 U.S.C. §§ 423(d)(3).  The claimant has the burden of proving that she is disabled and

establishes a prima facie case if she shows that her impairment prevents her from performing her

previous occupation.  *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986).

Here, O'Neil contends the ALJ erred in several respects.  She argues that the ALJ

disregarded objective medical evidence and mistakenly found several of her limitations non-

severe.  She further asserts that the ALJ erred by failing to credit her testimony and her treating

physician's opinion and thereby neglecting to include all her physical limitations in the

hypothetical to the vocational expert.

## I.    Severity Determination

At step two, an ALJ must determine whether the claimant has any combination of

impairments that significantly limit her ability to do basic work activities.  20 C.F.R. §

404.1520(c).  Before an ALJ can conclude that a claimant's symptoms affect the claimant's

ability to work, "medical signs or laboratory findings . . . must show the existence of a medical

impairment."  20 C.F.R. § 404.1529(b); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th

Cir. 2005).  "Under no circumstances may the existence of an impairment be established on the

basis of symptoms alone."  SSR 96-4, 1996 SSR LEXIS 11, at *3 (July 2, 1996)[1]; *see also* 20

---

[1] Courts give "some deference" to Social Security Rulings (SSRs) "as long as they are consistent with the Social Security Act and regulations."  *Ukolov*, 420 F.3d at 1005, n.2.  The Ninth Circuit has held that SSR 96-4p "is consistent with the purpose of Title II and XVI of the Social Security Act to provide financial assistance to those who are disabled."  *Id.*

C.F.R. § 404.1508.  Medical signs and laboratory findings are anatomical, physiological, or

psychological abnormalities shown by "medically acceptable" clinical or laboratory diagnostic

techniques.  *Ukolov*, 420 F.3d at 1005; *see also* 20 C.F.R. § 404.1529(b).

 An ALJ can find an impairment "not severe only if the evidence establishes a slight

abnormality that has no more than a minimal effect on an individual's ability to work."  *Smolen*

*v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).  An ALJ's erroneous finding

that an impairment is non-severe constitutes harmless error, however, if the ALJ resolves step

two in the claimant's favor and properly considers limitations imposed by the impairment at

other steps of the sequential process.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's

failure to discuss the claimant's impairment in the severity determination was harmless where the

ALJ considered any limitations posed by the impairment in the analysis of whether the claimant

could perform past relevant work); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (ALJ's

failure to include an impairment in step two could only prejudice claimant at other steps because

step two was resolved in the claimant's favor).

 Here, O'Neil asserts that the ALJ erred by rejecting objective medical evidence of her

fibromyalgia, hand, wrist and knee impairments and by finding that those limitations were not

severe.  O'Neil's characterization of the ALJ opinion is not accurate, however.  The ALJ did not

reject the medical evidence of fibromyalgia.  The ALJ concluded that O'Neil's fibromyalgia

constituted a severe impairment and therefore necessarily accepted the medical evidence

supporting her fibromyalgia diagnosis.  (Tr. 15.)

 The ALJ did, however, find that there were "no objective medical records to corroborate

the claimant's allegations" of carpal tunnel syndrome.  *Id.* at 16.  That conclusion is supported by

the record.  In April 2004, O'Neil's treating physician, Dr. Morris, found that she had positive

Tinel's sign over both ulnar nerves at the elbow but her Phalen's test, which is used to diagnose

carpal tunnel syndrome, was negative.[2]  *Id.* at 179.  He concluded that her complaints of

paresthesias, or "numbness and tingling," from the elbow down was "without a single

physiologic explanation."  *Id.*   In April 2005, an examining physician, Dr. Solomon, mentioned

O'Neil's "subjective evidence" of ulnar neuropathy but found she had negative Tinel's sign and

no significant atrophy or sensory loss.  *Id.* at 209-210.  He concluded that O'Neil "does not have

any evidence of carpal tunnel syndrome."  *Id.* at 210.  The medical record is devoid of other

references to carpal tunnel syndrome.  Accordingly, I find that the record supports the ALJ's

conclusion that there were "no objective medical records to corroborate" O'Neil's allegations of

carpal tunnel syndrome.  *Id.* at  16.

The ALJ also found that there were no objective medical records to corroborate O'Neil's

allegations of bilateral knee pain.  The record does not support that conclusion, however.  Dr.

Solomon, the examining physician, found "a moderate degree of effusion" in O'Neil's knee

joints, "positive anterior laxity" in both knees and increased medial and lateral laxity on the right

side.  *Id.* at  209.  Due to O'Neil's apprehension, he was unable to perform a McMurray's test,

which diagnoses torn knee cartilage, or a pivot shift test, which detects an anterior cruciate

ligament (ACL) deficiency, but noted that she had a normal gait and no significant instability of

the hips, knees or ankles  *Id.* at 209-210.  He concluded that he "suspects  internal knee

---

[2]Tinel's sign is a cutaneous tingling sensation produced by pressing on or tapping the
nerve trunk that has been damaged or is regenerating following trauma."  *Sepulveda v. Astrue*,
06-08164, 2008 U.S. Dist. LEXIS 93906, at *13 n.4 (C.D. Cal. Sept. 19, 2008) (citing Taber's
Cyclopedic Medical Dictionary, p. 2192 (20th ed. 2005).  "Phalen's test is a maneuver used in the
physical diagnosis of carpal tunnel symptoms."  *Id.* at n.5.

derangements bilaterally, most likely ACL."  *Id.* at 210.  Thus, the record is not completely devoid of medical evidence of physical abnormalities in O'Neil's knees but rather shows that the doctor who detected those abnormalities was unable to arrive at a diagnoses.  *Id.*

Moreover, the ALJ's conclusion that no objective medical evidence supported O'Neil's allegations of carpal tunnel and knee pain is puzzling in another respect.  The ALJ also found that O'Neil's carpal tunnel and knee pain were non-severe impairments, which by definition, requires that the ALJ found the medical evidence established "a slight abnormality."  *See Smolen*, 80 F.3d at 1290.  In addition, O'Neil's symptoms could be attributed to fibromyalgia, which the ALJ found to be a severe impairment.  (Tr. 15, 247); *see also Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004) (symptoms of fibromyalgia "include chronic pain throughout the body, multiple tender points" and stiffness, among others).

Despite the inconsistencies in the ALJ's findings, the ALJ resolved step two in O'Neil's favor when the she concluded that O'Neil's obesity and fibromyalgia impairments were severe. (Tr. 15.)  Moreover, the ALJ discussed O'Neil's hand, wrist and knee limitations as part of the residual functional capacity determination.  *Id.* at 19.  As a result, any error the ALJ committed in finding O'Neil's hand, wrist and knee impairments non-severe was harmless if the ALJ properly considered those limitations at the other steps of the sequential process.  *See Lewis*, 498 F.3d at 911.  Therefore, in the sections that follow, I consider whether the ALJ properly considered O'Neil's hand, wrist and knee impairments in the residual functional capacity determination and appropriately addressed them in the hypothetical to the vocational expert.

## II.    Residual Functional Capacity Determination

The RFC assessment describes the work-related activities a claimant can still do on a

Page 7 - FINDINGS AND RECOMMENDATION

sustained, regular and continuing basis, despite the functional limitations imposed by her

impairments.  20 C.F.R. § 404.1545(a), (e); SSR 96-8p, 1996 SSR LEXIS 5, at *5 (July 2, 1996).

 The ALJ must reach the RFC assessment based on all the relevant evidence in the case record

including medical records and the effects of symptoms, including pain, that are reasonably

attributed to a medically determinable impairment. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,

883 (9th Cir. 2006); SSR 96-8p, 1996 SSR LEXIS 5, at *14.  The ALJ, however, need not

incorporate limitations identified through claimant testimony or  medical opinions that the ALJ

permissibly discounted.  *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir.

2004).

        Here, O'Neil argues that the ALJ erred by discrediting her testimony regarding her

symptoms.  She further contends that the ALJ improperly rejected the opinion of her treating

physician, Dr. Morris, that her impairments rendered her permanently disabled.  O'Neil also

contends that the ALJ failed to adequately develop the medical record.  Finally, she argues that,

as a result of the foregoing errors, the ALJ omitted some of her physical limitations in her

hypothetical to the vocational expert.

### A.      Claimant Credibility

        Once a claimant produces medical evidence of an underlying impairment, an ALJ may

not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully

corroborate the alleged severity of pain.  *Burch v. Barnhart*, 400 F.3d at 680 (citation omitted).

Moreover, the ALJ's credibility determination must include findings "sufficiently specific to

permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."

*Tommasetti*, 533 F.3d at 1039.  Unless an ALJ makes a finding of malingering based on

Page 8 - FINDINGS AND RECOMMENDATION

affirmative evidence, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also* SSR 95-5p, 1995 SSR LEXIS 12, at * 4 (1995). "[G]eneral findings are insufficient." *Burch*, 400 F.3d at 680.

Although an ALJ may not reject a claimant's symptom testimony based solely on a lack of medical evidence, an ALJ may consider the medical evidence as one of many factors relevant to determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). The ALJ  may also consider: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors; type, dosage, effectiveness, and adverse side-effects of any pain medication; other treatment for relief of pain; and the claimant's functional restrictions and daily activities. *Burch*, 400 F.3d at 680 (citations omitted); *see also* 20 C.F.R. § 404.1529(c). Moreover, the ALJ may employ ordinary techniques of credibility evaluation, such as prior inconsistent statements concerning symptoms or an inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *Tommasetti,* 533 F.3d at 1039; *Smolen*, 80 F.3d 1284. "If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Tommasetti*, 533 F.3d at 1039 (citation omitted).

Here, O'Neil argues that the ALJ's assessment of her credibility erred in several respects. O'Neil asserts that the ALJ merely referred to her daily activities without considering whether O'Neil could perform those activities on a consistent, routine basis and without explaining how they were discrediting to her. O'Neil further asserts that the ALJ found contradictions in her

testimony where none existed.  In addition, O'Neil contends that the ALJ mistakenly found her

non-compliant with treatment by failing to consider that she was intolerant to pain medication

and could not afford treatment.

### 1.    Daily Activities

"The Social Security Act does not require that claimants be utterly incapacitated to be

eligible for benefits and many home activities are not easily transferable to what may be the

more grueling environment of the workplace." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)

(citations omitted).  Rather, a claimant's daily activities may support an adverse credibility

finding where the "claimant engages in numerous daily activities involving skills that could be

transferred to the workplace" or where the activities are inconsistent with claimant's alleged

symptoms.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ discussed O'Neil's daily activities (Tr. 19) but in some cases disregarded

statements regarding how pain affected O'Neil's ability to carry on those activities.  The ALJ

accurately described O'Neil's report that her pain affected her hiking, gardening and painting

hobbies.  *Id.* at 19, 116-17.   The ALJ, however, noted that O'Neil "went to the bookstore;

grocery shopped; cooked; did laundry; cleaned house and watered her outside plants" without

indicating how O'Neil's pain affected those activities.  *Id.* at 19.  O'Neil in fact had reported, "I

use [sic] to love to cook, now it just means back pain and I hate it." *Id.* at 114.  She also said she

watered her plants, cleaned and did laundry "as seldom as possible," that she tried to make trips

to the store quick and that "sometimes my back hurts so much I leave the store with nothing."

*Id.* at  115.

Similarly, the ALJ discussed the third party report of O'Neil's ability to perform

household chores without mentioning that the report also indicated that O'Neil needed frequent

rests and was limited by pain. *Id.* at 19, 94, 97.  Additionally, although the ALJ accurately noted

that a third party report indicated that O'Neil needed encouragement to do house work because

she was "self limiting herself" *id.* at  19, 94, she did not mention that a subsequent third party

report explained that O'Neil refrained from activities due to pain, *id.* at 125.  The second report

stated that O'Neil needed encouragement because "[i]t is difficult to perform even necessary

tasks when you know they will result in increases [sic] pain and disability."  *Id.*

     The ALJ opinion also fails to indicate whether the ALJ relied on O'Neil's daily activities

as a basis for her adverse credibility finding.  The ALJ, however, must make specific findings

relating to the claimant's daily activities before they may form the basis of an adverse credibility

finding.  *Burch*, 400 F.3d at 681; *see also Robbins*, 466 F.3d at 884-885 (refusing to affirm an

ALJ's credibility finding because it was not supported by specific findings and reasoning).

Moreover, if the ALJ did find that O'Neil's activities conflicted with her symptom testimony, that

finding lacks support of substantial evidence in the record,  because it failed to consider the

totality of the evidence bearing on O'Neil's ability to perform those activities.  *See Reddick v.

Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ 's credibility findings and evaluation of the

record were not supported by substantial evidence where the ALJ failed to fully account for all

parts of the testimony or reports concerning the claimant's activities).

## 2.    Inconsistent Statements

     As noted above, an ALJ may look to a claimant's prior inconsistent statements

concerning symptoms as a ground for finding the claimant not credible.  *Tommasetti,* 533 F.3d at

1040 (ALJ credibility finding properly considered that claimant's testimony that his diabetes was

Page 11 - FINDINGS AND RECOMMENDATION

not disabling conflicted with his prior claim that it was a disabling condition); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly inferred that claimant's "lack of candor" regarding her drug and alcohol use carried over to her description of physical pain). Here, the ALJ found that O'Neil made several inconsistent statements over the course of her disability claim. (Tr. 19-20.) Some of the ALJ's conclusions are supported by the record, while others are not, as explained below.

The ALJ found that O'Neil's reports concerning her ability to walk conflicted with each other and with the third party function report. *Id.* at 19. All of O'Neil's accounts, however, indicated that she could walk a few, or two or three blocks. O'Neil indicated in her January 2005 pain questionnaire and function report that she could walk a "few blocks." *Id.* at 74-75, 81. Her September 2005 pain and fatigue questionnaires also said she could walk a "few blocks" for twenty minutes. *Id.* at 122, 133. O'Neil's September 2005 function report indicated she could walk "about two blocks" and the third party function report stated that O'Neil could walk two to three blocks. *Id.* at 95, 97, 117. A subsequent third party report indicated uncertainty regarding how far O'Neil could walk but also stated that O'Neil could stand or walk only for short periods of time. *Id.* at 128. At the hearing, O'Neil testified that she could probably walk "a couple" blocks. *Id.* at 274.

The ALJ's finding lacks the support of substantial evidence in the record. The ALJ apparently found a contradiction between reports that O'Neil could walk a "few blocks" and reports that she could walk two or three blocks. *Id.* at 19. A few blocks, however, encompasses, not contradicts, two or three blocks. Only a strained interpretation of the evidence leads to a finding that these reports were inconsistent.

The ALJ also found that O'Neil gave inconsistent explanations for her inability to use the computer for extended periods because she said it was due to back pain but later said it was because her arms went numb. *Id.* at 19-20. At the hearing, however, O'Neil testified that she tried not to use the computer much because it hurts her back and her arm. *Id.* at 268, 277. O'Neil's January 2005 function report indicated that prolonged sitting exacerbated her back pain and that she wore a wrist brace when using the computer. *Id.* at 81, 82. The third party function reports indicated that O'Neil wore a wrist brace for the computer and note that she decreased computer use due to pain from sitting for long periods. *Id.* at 98, 99, 127, 129. Thus, O'Neil's testimony, reports and the third party function reports all indicate that O'Neil suffered from back problems when sitting *and* wrist or arm problems when using the computer. I accordingly find that the record does not support the ALJ's conclusion that O'Neil gave inconsistent explanations for her inability to use the computer.

The record does, however, support the ALJ's conclusion that O'Neil gave inconsistent accounts of her ability to sit for extended periods. O'Neil's January 2005 pain questionnaire indicated that prolonged sitting exacerbated her back pain. *Id.* at 73. Her function report from the same time also noted that sitting more than twenty minutes caused her pain. *Id.* at 81. She testified at the hearing that she was unable to sit for more than fifteen or twenty minutes and that, when she left her job, she thought she could sit for four hours. *Id.* at 268-270, 272. Although O'Neil left her job in September 2004, her September 2005 fatigue questionnaire states that she can sit for four hours before rest with the explanation that four hours of sitting is "too much time without moving." *Id.* at 134. Her function report from the same time period indicated that her ability to sit varies. *Id.* at 117. Thus, substantial evidence supports the ALJ's conclusion that

O'Neil's statements regarding her ability to sit for prolonged periods were inconsistent and therefore not credible.

The ALJ also properly found that O'Neil's description of her hand and wrist problems varied.  At the August 2007 hearing, O'Neil testified that she had numbness up and down her arms but also stated that she had it just in her right arm.  *Id.* at 267, 276.  She told an examining physician, Doctor Solomon, that she had numbness in both of her hands.  *Id.* at  208.  She told Doctor Cutler, who she saw for one visit, that she had pain in her hands, some in the wrist, but "[s]he does not get any numbness or tingling and her discomfort is more on the index finger and thumb area."  *Id.* at 252.  She earlier described her problem to her treating physician as numbness and tingling in her upper extremities.  *Id.* at  179.

Finally, the ALJ found that O'Neil's testimony that her treating sources had recommended no specific exercise regimen conflicted with the medical record.  *Id.* at 20.  At the hearing, O'Neil testified that no doctor had given her exercises to do for her fibromyalgia but then later testified her doctor had asked her to do some walking.  *Id.* at  264, 273.  Doctor Cutler told O'Neil "to get more proactive in terms of walking."  *Id.* at 247, 252.  Thus, the ALJ's conclusion that O'Neil gave inconsistent testimony is supported by the record, which reflects that one of O'Neil's doctors instructed her to walk for exercise and O'Neil initially denied that fact in her testimony.

In summary, the ALJ mistakenly found that O'Neil made inconsistent statements about the distance she could walk and the symptoms she experienced when using a computer.  The ALJ, however, properly found that O'Neil made inconsistent statements regarding her ability to sit for long periods, her arm and hand symptoms and whether her doctor gave her exercise to do.

Page 14 - FINDINGS AND RECOMMENDATION

Thus, even after discounting some of the ALJ's observations, substantial evidence remains to

support the ALJ's finding that O'Neil made inconsistent statements regarding her symptoms. *See*

*Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (accepting the ALJ's credibility

finding where substantial evidence remained even if the court discounted some of the ALJ's

observations of the claimant's  inconsistent statements and behavior).

### 3.    Noncompliance With Treatment

If a claimant complains about disabling pain but fails to seek treatment, or to follow

prescribed treatment, an ALJ may consider that failure as a basis for finding the complaint

unjustified or exaggerated. *Orn*, 495 F.3d at 638.  Failure to seek relief from pain is probative of

credibility because "a person's normal reaction is to seek relief from pain, and because modern

medicine is often successful in providing some relief." *Id.*; *Tommasetti,* 533 F.3d at 1039 (ALJ

permissibly inferred from claimant's conservative treatment regime that claimant's pain was not

as severe as he reported).  If, however, the claimant provides evidence of a good reason for

failing to seek or follow treatment, the ALJ cannot reject the claimant's symptom testimony on

that ground.  *Smolen*, 80 F.3d at 1284 (claimant's failure to take medication not a clear and

convincing reason to reject her testimony where she testified that she had no insurance and could

not afford treatment).  Here, the ALJ discredited O'Neil's pain testimony based on a finding that

it was at odds with O'Neil's failure to follow her doctors' suggestion that she walk for exercise

and failure to follow up with prescription medications.  (Tr. 18, 20.)

The ALJ found that O'Neil was non-compliant with her physician's suggestion that she

walk for exercise.  *Id.* at 18.)  O'Neil's treating physician, Dr. Morris, encouraged her to maintain

"regular daily exercise." *Id.* at 236.  Dr. Morris' physician assistant, Suzanne Willow, suggested

Page 15 - FINDINGS AND RECOMMENDATION

that she engage in "mild exercise on a regular basis and even when she does not feel very good and not overdoing it on days when she does feel better." *Id.* at 194. As noted, Dr. Cutler told O'Neil "to get more proactive in terms of walking." *Id.* at 247. In response to the ALJ's question regarding whether she did any exercise, O'Neil indicated that she did Tai-Chi hand exercises. *Id.* at 264. When asked how much walking she could do in a typical week, O'Neil responded that she was able to walk a half a block to get the newspaper once a week and that, when she went to the store a few times per week, she parked as far away from the store as possible and walked to the store. *Id.* at 274. O'Neil also indicated that she could walk a couple blocks but would have to rest a day or more afterward. *Id.*

The evidence does not support the ALJ's conclusion that O'Neil was non-compliant with her doctors' suggestions that she engage in "mild exercise" and get proactive about her walking. O'Neil's testimony indicated that she did hand exercises and walked on a regular basis. Moreover, her testimony was consistent with her reports that she could walk only a few blocks or two or three blocks. I therefore conclude that the ALJ erred in finding that O'Neil did not comply with her doctors' suggestions concerning exercise.

The ALJ found that O'Neil's non-compliance with her prescription treatment was at odds with the alleged severity of her pain. *Id.* at 18. Although the record includes numerous references to O'Neil's intolerance to various prescription drugs, one prescription medication, Skelaxin, proved effective in improving O'Neil's pain symptoms. *Id.* at 236. At the hearing in August 2007, however, O'Neil testified that she used only a heating pad and over-the-counter drugs for her pain because she was allergic to everything she tried. *Id.* at 264. Thus, the record shows that O'Neil stopped taking Skelaxin despite its effectiveness in treating her symptoms.

Page 16 - FINDINGS AND RECOMMENDATION

O'Neil contends that her failure to follow up with treatment is due to her lack of health insurance and her inability to pay for further treatment. O'Neil lost her health insurance in 2003. *Id.* at 282. The record contains several references to O'Neil's concerns about her financial situation and inability to afford treatment. *Id.* at 161, 163, 179, 194, 240.

O'Neil's treatment history, however, reflects that she did not avail herself of reduced fee medical services. O'Neil saw her treating physician, Dr. Morris and his physician assistant, Suzanne Willow, regularly in 2004. In December 2004, she visited the Community Health Center "for a consultation and possible establishment of care." *Id.* at 203. The center encouraged O'Neil to follow up with Dr. Morris for a CT scan but informed her that if staying with Dr. Morris was a financial burden, she could return to the center, where they would pursue her care to the best of their ability. *Id.* at 204. O'Neil, however, did see not a doctor again until a year later when she returned to Dr. Morris' office for two visits, free of charge, in January and August of 2006. *Id.* at 161, 194, 240, 282. O'Neil also visited La Clinica in July of 2006 because they accept people with no insurance. *Id.* at 282. Although the practitioner there indicated that it did not seem as if O'Neil was interested in transferring care, O'Neil testified that La Clinica did not understand why she was there and told her to return to her doctor because they were not familiar with fibromyalgia. *Id.* at 247, 282. The ALJ could rationally conclude from this record that O'Neil's financial situation did not adequately explain her failure to seek treatment, especially in light of the Community Health Center's offer to pursue her care.

The ALJ also properly noted that O'Neil continued to consume alcohol despite her doctors' instructions to stop and that the money spent on alcohol could have been used for treatment or diagnostic tests. The record reflects that in 2004, Willow advised O'Neil to cut

down her alcohol consumption to three to five drinks per week but O'Neil continued to drink two glasses of wine per day. *Id.* at 167, 172. In August 2006, her doctor told her to "cease all alcohol intake permanently" but she continued to drink "a couple of glasses a week." *Id.* at 236, 279. When the ALJ asked if the money spent on alcohol "could have paid for some x-rays," O'Neil responded "that's possibly true." *Id.* at 279.

In sum, although the ALJ erred in finding that O'Neil was noncompliant with her doctors' orders to exercise, substantial evidence in the record supported the ALJ's finding that O'Neil's noncompliance with her prescription medication was inconsistent with her reports of pain. Moreover, as noted above, the record supported the ALJ conclusions that O'Neil made inconsistent statements regarding her ability to sit, her arm and hand symptoms and whether her doctor told her to exercise. Inconsistent statements and noncompliance with treatment serve as clear and convincing reasons to discount claimant testimony. *Tommasetti*, 533 F.3d at 1039. Thus, because the ALJ cited several clear and convincing reasons to discount O'Neil's testimony, supported by substantial evidence in the record, the ALJ's unsupported factual determinations amounted to harmless error. *Bray*, 554 F.3d at 1227 (ALJ's error in one credibility finding was harmless where the ALJ presented four other independent bases for discounting the claimant's testimony). The court should therefore not disturb the ALJ's credibility finding.

**B.    Treating Physician Opinion Regarding Disability**

Courts distinguish the physicians who might be called upon to assess a claimant's disability by categorizing them into three types: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*,

81 F.3d 821, 830 (9th Cir. 1995). Because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual," *Sprague v. Brown*, 812 F.2d 1226, 1230 (9th Cir. 1987), as a general rule, courts give more weight to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester*, 81 F.3d at 830. However, a treating physician's opinion is not conclusive as to whether or not a claimant meets the statutory definition of disability, because that is a legal conclusion reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see also Ukolov*, 420 F.3d at 1004 ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the . . . the ultimate determination of disability.") (citation omitted).

Here, the ALJ gave no weight to the opinion of O'Neil's treating physician, Dr. Morris, and his physician assistant, Suzanne Willow. (Tr. 18.) Instead of the opinion of O'Neil's treating sources, the ALJ apparently relied on the findings of the state medical consultant, a nonexamining physician, who concluded that O'Neil had the residual functional capacity to perform light work. *Id.* at 233. Specifically, the consultant found that O'Neil could lift ten pounds frequently and twenty pounds occasionally and could stand, walk or sit about six hours in an eight hour work day. *Id.* at 227, 233. Although the ALJ did not specifically discuss the state medical consultant's RFC findings, the ALJ also found that that O'Neil could lift ten pounds frequently and twenty pounds occasionally and could stand, walk or sit about six hours in an eight hour work day, but added that O'Neil must sit for five minutes after being on her feet for one hour. *Id.* at 17.

### 1. Deference Owed to Treating Physician

"[A]n ALJ may reject a treating physician's uncontradicted opinion on the ultimate issue of disability only with 'clear and convincing' reasons supported by substantial evidence in the record." *Holohan v. Massanari*, 246 F.3d 1195, 1202-1203 (9th Cir. 2001) (citation omitted). "When evidence in the record contradicts the opinion of a treating physician, the ALJ must present 'specific and legitimate reasons' for discounting the treating physician's opinion, supported by substantial evidence." *Bray*, 554 F.3d at 1228. The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Thomas*, 278 F.3d at 957 (citations omitted).

Here, evidence in the record contradicts Dr. Morris' opinion that O'Neil was completely disabled by fibromyalgia. Before Dr. Morris reached his fibromyalgia diagnosis, Dr. Westfall, a non-examining physician concluded that O'Neil could perform light work. (Tr. 233.) Dr. Westfall reached her opinion in 2005, based on her review of the record to that point, which included a 2005 orthopedic exam that showed O'Neil had good range of motion, a normal gait and normal strength and had symptoms that were unsupported by the objective medical evidence. *Id.* at 209-210, 233. Moreover, although Westfall wrote her opinion before O'Neil's fibromyalgia diagnosis, Dr. Cutler, who knew of her fibromyalgia diagnosis, impliedly found that O'Neil was capable of work when she recommended that O'Neil use ice and splints "while she is working." *Id.* at 247. The ALJ noted both Westfall's and Cutler's opinions in the explanation of her RFC determination. *Id.* at 17.

Page 20 - FINDINGS AND RECOMMENDATION

      2.        **Specific and Legitimate Reasons to Discount the Treating Physician's Opinion**

An ALJ may reasonably discount a physician opinion if it was based on the claimant's less than credible statements. *Bray*, 554 F.3d at 1128 (ALJ reasonably elevated an examining physician opinion over a treating physician's opinion regarding the claimant's limitations where the treating physician opinion was based on the claimant's discredited statements); *Tommasetti*, 533 F.3d at 1041 (ALJ's adverse credibility finding regarding claimant supported the rejection of the treating physician opinion that was based "to a large extent" on a claimant's self-reports); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (same).

Here, the ALJ rejected Morris' opinion because she found O'Neil's testimony less than credible. The ALJ cited O'Neil's noncompliance with prescription treatment and with doctors' recommendations that she walk for exercise as reasons to reject Morris' opinion. (Tr. 18.) Although the ALJ's analysis of O'Neil's credibility erred in some respects, as noted above, the ALJ's the ultimate credibility finding was not in error. Thus, the ALJ's decision to discount Morris' opinion based on O'Neil's lack of credibility was proper to the extent that Morris based his opinion on O'Neil's subjective complaints.

The record reflects that Morris' opinion relied on O'Neil's description of her symptoms. Although Willow, performed the test that led to O'Neil's fibromyalgia diagnosis, she did not discuss any clinical findings related to O'Neil's limitations and instead merely noted that O'Neil "may well qualify" for disability secondary to her fibromyalgia. *Id.* at 161, 194. Morris' subsequent opinion appears in a brief letter that described O'Neil's symptoms as "excruciating back pain . . . as well as pain in her knees and hands," "chronic fatigue, chronic sleep disturbance, paresthesias, and symptoms of depression." *Id.* at 243. Without further

Page 21 - FINDINGS AND RECOMMENDATION

explanation, the letter concluded, "Although the patient will continue followup for medication changes . . . it is my medical opinion that the patient is currently and for long term will remain disabled due to her fibromyalgia." *Id.* In light of Morris' reliance on O'Neil's subjective complaints, and the ALJ's proper finding that O'Neil was not credible, the ALJ properly rejected Morris' opinion that O'Neil's fibromyalgia rendered her completely disabled.

### C.    ALJ Duty to Develop the Record

The claimant bears the burden of proof to establish disability. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir 2001). The ALJ, however, "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288 (citation omitted). This duty exists even when the claimant is represented by counsel, *id.,* yet it arises "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60. O'Neil argues that the ALJ had a duty to contact Dr. Morris regarding his reasons for opining that she was disabled.

Here, the ALJ had sufficient evidence to assess Dr. Morris' opinion. As discussed above, substantial evidence in the record supports the ALJ's decision to reject Dr. Morris' opinion. Dr. Morris' opinion was not ambiguous in its reliance on O'Neil's subjective descriptions of her symptoms. Moreover, the ALJ properly found that O'Neil was not fully credible. Therefore, the ALJ did not have a duty to develop the record further.

### D.    Hypothetical Posed to the Vocational Expert

"An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). An examining physician's

Page 22 - FINDINGS AND RECOMMENDATION

independent clinical findings that differ from the findings of the treating physician constitute substantial evidence. *Orn*, 495 F.3d at 632. Moreover, the report of a non-examining physician may serve as substantial evidence if it is consistent with and supported by other evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Here, the ALJ's RFC determination is supported by substantial evidence in the record. As noted above, the ALJ found that O'Neil had a residual functional capacity to lift ten pounds frequently and twenty pounds occasionally and could stand, walk or sit about six hours in an eight hour work day, but must sit for five minutes after being on her feet for one hour. (Tr. 17.) That finding reflects the opinion of the non-examining state medical consultant. *Id.* at 233. The consultant's opinion, in turn, is consistent with the results of an orthopedic exam conducted by an examining physician. *Id.* at 209-210. That exam found that O'Neil had full range of motion in her back and upper extremities, normal motor function and tone in her upper extremities, normal range of motion and strength in her lower extremities, normal gait, and no significant instability of the hips, knees or ankles. *Id.*

Moreover, the ALJ's decision to reject certain restrictions is reasonable and is supported by the record. As noted above, the ALJ properly discounted O'Neil's subjective complaints of more extensive limitations. Although the ALJ erred when she found that O'Neil made inconsistent statements concerning her ability to walk, the ALJ's ultimate finding that O'Neil was not fully credible was supported by other evidence in the record. Moreover, the orthopedic exam did not reveal that O'Neil had any problems walking. Accordingly, the court should uphold the ALJ's RFC determination.

## CONCLUSION

Based on the foregoing, the ALJ applied correct legal standards in reaching her decision that O'Neil was not disabled and substantial evidence supported that decision.  The court should therefore affirm the Commissioner's decision and judgment should be entered accordingly.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due May 18, 2009.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement.

Dated this 4th day of May, 2009.

 /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 24 - FINDINGS AND RECOMMENDATION